875 F.2d 316
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
ROGER J. SPOTT, D.D.S., P.A., Petitioner-Appellant,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
ROGER J. Spott, D.D.S., P.A.; Michele S. Spott,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 88-2926, 88-2927.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 12, 1989.
Decided: May 22, 1989.
Rehearing Denied June 14, 1989.
 
 Robert Doran Grossman, Jr. (Grossman and Flask, P.C., on brief), for appellant.
 Doris Denise Coles (James I. K. Knapp, Acting Assistant Attorney General, Gary R. Allen, David I. Pincus, Tax Division, Department of Justice, on brief), for appellee.
 Before K.K. HALL and JAMES DICKSON PHILLIPS, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Roger J. Spott, D.D.S., his wife, Michele S. Spott, with whom he filed joint income tax returns, and the corporation known as Roger J. Spott, D.D.S., P.A., through which Spott ran his dental practice (hereafter referred to collectively as "Spott"), appeal from a Tax Court judgment upholding the Internal Revenue Service's findings of income tax deficiencies. Spott challenges the court's imposition of a discovery sanction and its determination that he failed to disprove the deficiencies by a preponderance of the evidence. Concluding that the Tax Court's imposition of the sanction was not an abuse of discretion and that its finding that Spott failed to carry his burden of proof at trial is not clearly erroneous, we affirm.
 
 
 2
 * In April 1986, the IRS issued statutory notices of deficiency to Spott individually and to the Corporation. The deficiencies arose from the IRS's disallowance of certain business expenses claimed by Spott and the Corporation in 1979-1982 and 1979-1983 respectively. In June 1986, the Corporation petitioned for a redetermination of the deficiency ascribed to it, and in July 1986 Spott did the same for his individual deficiency. The Tax Court consolidated the cases for trial and attached a pretrial order, directing the parties to stipulate to all facts to the maximum extent possible as Tax Court Rule 91(a) requires and cautioning that sanctions--including dismissal of the case and entry of adverse judgment--could be imposed against uncooperative parties.
 
 
 3
 In an apparent attempt to comply with the pretrial order, and as authorized by Tax Court Rule 70, which allows informal discovery among the parties, the IRS wrote Spott, suggesting a meeting at which they could determine which facts to stipulate. After wrangling over the date and location of the proposed meeting, Spott finally met with the IRS November 10, 1987. Although the particulars of the meeting are unclear, the results were clearly less than satisfactory, as the IRS soon after--on November 23, 1987--abandoned its efforts to gain cooperation through the informal mode of discovery and formally served upon Spott Interrogatories and a Request for Production of Documents pursuant to Tax Court Rules 71 and 72. The Interrogatories asked Spott to itemize, inter alia, each claimed business expense, indicating the date and time of the function, the identity of the person entertained, the business relationship of the person entertained, the business purpose of the meeting or function, the specific documents including receipts, invoices, bills and cancelled checks which substantiate the expense claimed. The document request listed 58 specific categories of documents, each coinciding with a disputed deduction.
 
 
 4
 On December 1, Spott again met with the IRS, bringing with him several boxes of loosely organized documents that allegedly supported his asserted deductions. After the IRS indicated its dissatisfaction with the state of the documents, Spott agreed to meet again on December 8, also agreeing to organize the documents so that each category of expenses could be readily substantiated by category for each year involved. In a letter dated December 3, however, Spott notified the IRS that the December 8 meeting was "postponed indefinitely," explaining that, in his view, no further "informal" meetings were required because the IRS was uncooperative and it had already issued formal discovery requests. On December 28, the IRS received Spott's Response to its Request for the Production of Documents. The Response "object[ed] to each and every request" on the grounds that
 
 
 5
 1. the IRS failed to specify a reasonable time, place, and manner of making the inspection pursuant to Rule 72;
 
 
 6
 2. the IRS already examined the requested documents at the meetings on November 10 and December 1 and while the IRS had the documents in its possession during the past four years; and
 
 
 7
 3. the IRS's request is merely part of a campaign to annoy, oppress and cause undue burden and/or expense to Spott.
 
 
 8
 On January 11, 1988, having received neither the documents requested nor the answers to the Interrogatories, the IRS filed a Motion to Compel Answers to Interrogatories, Production of Documents or to Impose Sanctions under Tax rule 104.
 
 
 9
 Two days later, without giving Spott an opportunity to respond to the IRS's motion, the Tax Court issued an order directing Spott to respond to the Interrogatories and to produce the documents requested by January 30. The Tax Court also scheduled a hearing on the IRS's request for sanctions for February 22, 1988. On January 14, the IRS received Spott's Answers to the Interrogatories. Spott claims the Answers were mailed by Certified Mail, Return Receipt Requested, on January 5, 1988, before the IRS filed its Motion to Compel and within the permissible time limit under the Rules. Spott did not answer any of the Interrogatories. Rather, with respect to the vast majority of the questions, he cited Tax Court Rule 71(e), which in some circumstances allows a respondent to specify the records from which the answers can be derived, and noted that the IRS had already examined the records during informal discovery and had possessed them during its four-year investigation. Spott added that he would "allow reasonable additional examination if required and if for specific records." With respect to a narrow range of Interrogatories, dealing with automobile leases, Spott wrote that the information was being researched and would be forwarded when it became available.
 
 
 10
 Although Spott denies that the IRS advised him of the inadequacy of his discovery participation, IRS witnesses testified that Spott called the IRS in mid-January and was told that his Answers to the Interrogatories were inadequate and that the IRS intended to seek sanctions at the February 22 hearing. When Spott and the IRS met again in early February, however, Spott's records still were not arranged in category groupings.
 
 
 11
 At the sanctions hearing on February 22, Spott reiterated that he intended to rely on the documents themselves to respond to the IRS's detailed Interrogatories rather than offering more precise responses. He claimed that because the receipts offered in support of his claimed business deductions contained the name of the person entertained and the subject of the discussion, such as "Dr. Smith, Patient," the IRS would be able to interpret the response without more assistance. The Tax Court found that Spott's reference to the documents alone was not fully responsive to the IRS's Interrogatories and, pursuant to its January 13 Order, imposed a sanction that precluded Spott from supplementing the documents with any other evidence at trial. The court also ordered that all evidence pertaining to the documents that Spott never produced was inadmissible.
 
 
 12
 At trial, Spott attempted to introduce the documentary evidence--mostly cancelled checks--organized as to category of expense for each year. The IRS objected to the introduction of the evidence on the grounds that such organization was precisely what the IRS had been unsuccessfully requesting all along and so should not be admitted at trial under the Tax Court's restrictive sanction. The court admitted the documentary evidence but sustained the IRS's objection as to the proffered categorization of the documents, explaining that the categorization would be ignored in accordance with the court's previous sanctions.
 
 
 13
 After trial, the Tax Court rendered a bench opinion, noting that Spott had been sanctioned for failing to answer the Interrogatories fully and holding that Spott had failed to carry his burden of proving that he was entitled to the challenged deductions as ordinary and necessary business deductions. The Tax Court later denied Spott's Motion for Reconsideration.
 
 
 14
 This appeal followed.
 
 II
 
 15
 Under Tax Court Rule 104(c), if a party fails to obey a discovery order made by the Tax Court, the court may "refus[e] to allow the disobedient party to support or oppose designated claims or defenses, or ... prohibit[ ] him from introducing designated matters in evidence." The rule also provides that "an evasive or incomplete answer or response [to a discovery request] is to be treated as a failure to answer or respond." Rule 104(d). We are convinced that the Tax Court's actions in this case--though certainly drastic--fall within the bounds of discretion permissible under Rule 104. See Pfluger v. Commissioner, 840 F.2d 1379, 1383 & n. 8 (7th Cir.1988) (upholding similar sanctions).
 
 
 16
 Although Spott attempts to convince us that the IRS and the Tax Court took advantage of an unsophisticated but cooperative taxpayer, the facts support a different interpretation. From the record before us, the Tax Court was fully justified in concluding that Spott deliberately had engaged in uncooperative and obstructive tactics in resisting discovery efforts by the IRS. Spott steadfastly refused to produce the requested records in a manner supportive of his claimed deductions. He continued to insist, throughout pretrial proceedings, that the IRS bore the burden of sorting through the requested documents. This confuses an IRS audit with a taxpayer's challenge to a resulting deficiency determination. In the tax court, Spott had the burden of proof. Welch v. Helvering, 290 U.S. 111, 115 (1933). He could not then expect the IRS to make his case. We conclude that the Tax Court did not abuse its discretion in prohibiting Spott from proving orally at trial that which he refused to produce during discovery. Pfluger, 840 F.2d at 1383 n. 8.
 
 
 17
 Spott makes several arguments, however, challenging the Tax Court's action. First, he claims that the IRS's motion to compel was untimely filed and should have been denied. While the motion was technically late--the last date for completion of discovery was Friday, January 8, 1988, and the motion was not filed until Monday the 11th--the lateness did not require denial of the motion. The Tax Court rules specifically provide that all motions should be timely filed, "unless the Court shall permit otherwise." Tax Ct.R. 54. In this case, the Tax Court had an obvious reason for permitting otherwise: all of the federal buildings in the area were closed on Friday the 8th because of inclement weather. Moreover, Spott waived this argument by failing to object to the timeliness of the motion before the trial court. See, e.q., Stewart v. Hall, 770 F.2d 1267, 1271 (4th Cir.1985).
 
 
 18
 Spott next argues that Rule 104(c) requires the Tax Court to allow the challenged party to respond to the motion before issuing the compliance order and to make a specific finding of noncompliance before imposing sanctions. While the Tax Court did issue the order before affording any opportunity to Spott for a hearing, that action was within its discretion under the rules. See Tax Ct.R. 50(b)(3) ("[A]ction [on a motion] may be taken with or without written response, hearing, or attendance of a party to the motion at the hearing."). We also find no error with respect to Spott's charge that the court failed to make a specific finding of noncompliance. While the court may not have rendered a specific finding of noncompliance before imposing sanctions, the transcript of the hearing on the IRS's motion for sanctions reveals that the court carefully considered Spott's claims of compliance, noting several times that his answers to the IRS's Interrogatories were nonresponsive. Additionally, in its bench opinion, the court indicated that sanctions had been imposed for Spott's "failure to fully answer" the Interrogatories. These findings are sufficient to support the sanction imposed here. While the Seventh Circuit has held that the Tax Court must make specific findings of willfulness, bad faith and a total failure to respond before imposing the sanction of dismissal under Rule 104, its holding was limited to the "extreme penalty of dismissal." Fox v. Commissioner, 718 F.2d 251, 254-55 (7th Cir.1983) (holding dismissal proper when Tax Court only "implicitly" found noncompliance willful and in bad faith). Courts construing the discretion afforded under the parallel rule in the Federal Rules of Civil Procedure, see Rule 37--to which the Seventh Circuit looked in Fox--recognize the findings of willfulness and conscious disregard as necessary to uphold the sanction of dismissal, but point out that the mere failure to respond to discovery requests is sufficient to justify less severe sanctions. Spott also charges, however, that the restrictive sanction imposed here is tantamount to dismissal and the court accordingly should be held to the higher standard. But Spott was permitted to prove his case using the documentation he offered during discovery. He only was prohibited from supplementing the documents with explanatory testimony of any sort, including the imposition of the explanatory organization he refused to supply during discovery. This is not tantamount to dismissal; therefore a showing of willfulness was not required. See Cope v. McPherson, 781 F.2d 207, 209 (D.C.Cir.1985) (preclusion of certain testimony not tantamount to dismissal in age discrimination suit when petitioner has other avenue of proving case).
 
 
 19
 Spott next argues that the court's imposition of sanctions was an abuse of discretion because the issue of the sufficiency of Spott's answers to the Interrogatories was not before the court on the date of the sanctions hearing. Spott contends that because the IRS's motion to compel crossed in the mail with his response, the issue before the court on the IRS's Motion to Compel was his alleged and presumed failure to respond, not the sufficiency of his answers. We disagree. Even if Spott's response was mailed before the Court issued its order, the court determined that the responses were inadequate and Rule 104(d) specifically provides that evasive or incomplete answers are to be treated as failures to respond. Therefore the court properly viewed Spott's response as only partly responsive and imposed the sanction accordingly.
 
 
 20
 Finally Spott argues that the Tax Court's imposition of sanctions was an abuse of discretion because his response to the Interrogatories was sufficient under Tax Court Rule 71(e) which provides that, in response to certain interrogatories, it is sufficient "to specify the records from which the answer may be derived or ascertained and to afford to the party serving the interrogatory reasonable opportunity to examine, audit or inspect such records and to make copies, compilations, abstracts or summaries." The rule is restricted, however, to situations in which "the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." Tax. Ct.R. 71(e). The facts of this case do not present such a situation.
 
 III
 
 21
 Spott next challenges the Tax Court's determination that he failed to produce sufficient evidence to support his business deductions. As this determination is one of fact, it is subject to reversal only if clearly erroneous. Betson v. Commissioner, 802 F.2d 365, 367 (9th Cir.1986). Additionally, the IRS's deficiency determinations are presumptively correct and a protesting taxpayer carries the burden of disproving them by a preponderance of the evidence. Welch v. Herring, 290 U.S. at 111, 115; Tax Court Rule 142. It is of course also true that the taxpayer carries the initial burden of showing his entitlement to his claimed deductions. See Deputy v. DuPont, 308 U.S. 488 (1940).
 
 
 22
 In rejecting Spott's challenge to the deficiencies, the Tax Court reasoned that Spott "furnished no proof regarding whether the deductions claimed in excess of those allowed by [the IRS] are reasonable and ordinary and necessary expenses under Section 162 [of the Tax Code]." Spott argues that he offered such proof--the boxes of documentary evidence--but that the Tax Court erroneously failed to review it to determine which expenses were ordinary and necessary, and thus allowable under Sec. 162. As noted above, Spott had the burden of proof on this assertion. Welch, 290 U.S. at 115. By failing to organize the documents pretrial, he was taking the risk that in their disorganized state the documents would fail to disprove the IRS's determinations of deficiency by a preponderance of the evidence. Having taken that risk and lost, Spott cannot now argue that the court bore the responsibility of making his case for him. See Dellums v. Powell, 566 F.2d 231, 235 (D.C.Cir.1977) ("[H]owever innocent a failure to provide discovery may be, it is fundamental that a party that does not provide discovery cannot profit from its own failure."). We therefore conclude that, in sustaining the IRS's determinations of deficiency, the Tax Court was not clearly erroneous.
 
 
 23
 AFFIRMED.